IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

TERESA MILLER,

    Plaintiff,

v.                                                             Civil Action No. 1:23-CV-26
                                                              (JUDGE KLEEH)

OFFICER HELMS, MORGANTOWN CITY
POLICE DEPARTMENT, ERIC POWELL,
and OFFICER BRADFORD,

    Defendants.

## REPORT AND RECOMMENDATION, RECOMMENDING THAT MOTION TO DISMISS [ECF NO. 4] OF DEFENDANTS ERIC POWELL AND MORGANTOWN CITY POLICE DEPARTMENT BE GRANTED

This matter is before the undersigned Magistrate Judge pursuant to a Referral Order [ECF No. 8], entered by the Hon. Thomas S. Kleeh, Chief United States District Judge, on March 15, 2023. By the Referral Order, Judge Kleeh directed that the undersigned enter orders or reports and recommendations, as appropriate, and dispense with other matters which may arise herein.

Pending before the Court is a motion to dismiss [ECF No. 4] and memorandum in support, thereof [ECF No. 4] filed by Defendants Eric Powell ("Powell") and Morgantown City Police Department ("MCPD") on March 13, 2023. The Court issued a Roseboro Notice [ECF No. 9] concerning Defendants' motion, which Plaintiff received [ECF No. 14] on March 21, 2023. The Court also is in receipt of *pro se* Plaintiff's "Answer to Motion to File Out of Time Due to the Novel Coronavirus and Dismissal" [ECF No. 17], which the undersigned construes as a response to Defendants' motion, filed on March 27, 2023. Finally, the Court is in receipt of Defendants' reply [ECF No. 22] in support of their motion, filed on April 4, 2023.

1

Having reviewed the briefs of the parties herein and conducted a thorough review of the record and the applicable law, the undersigned respectfully **RECOMMENDS** that Defendants' motion to dismiss [ECF No. 4] be **GRANTED** and that *pro se* Plaintiff's Complaint [ECF No. 1-2] be **DISMISSED without prejudice** as more fully set forth below.[1]

### I. PLAINTIFF'S ALLEGATIONS, AND FACTUAL AND PROCEDURAL BACKGROUND

On or about February 7, 2023, *pro se* Plaintiff filed her Complaint [ECF No. 1-2] in the Circuit Court of Monongalia County, West Virginia. Defendants jointly removed the matter [ECF No. 1] to the Northern District of West Virginia on March 3, 2023.

The allegations in the Complaint are not entirely obvious, but it appears that Plaintiff wishes to lodge claims arising from a matter in this District in which she was criminally prosecuted, Criminal Action No. 1:19-CR-41. Plaintiff complains of actions taken by law enforcement at the time of her arrest, and corresponding search and seizure, on July 3, 2018. This arrest (and the accompanying search and seizure) resulted in Plaintiff being indicted on one count in the underlying criminal action – namely, unlawful possession of a firearm by a felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). After a bench trial on October 26, 2020, Plaintiff was found guilty of the charge. On February 23, 2021, she was sentenced to a term of imprisonment of 41 months, followed by a term of supervised release of one year, with no fine. However, the United States Court of Appeals for the Fourth Circuit issued an opinion on November 29, 2022 by which it vacated Plaintiff's conviction and sentence and remanded the criminal matter for further proceedings. Ultimately, on January 13, 2023, the Government filed a

---

[1] By a separate Report and Recommendation issued on this same date, the undersigned addresses a motion to dismiss filed by co-Defendants herein. For the sake of simplicity, the summary of the factual and procedural background, and some of the legal review and analysis, is nearly identical in the other Report and Recommendation.

Dismissal of the indictment of Plaintiff, to which the Court assented on that same date. [See ECF No. 197 in Criminal Action No. 1:19-CR-41].

In her Complaint in the instant matter, Plaintiff alleges that she was subjected to an illegal search and seizure, and suffered damages as a result. The bulk of the Complaint [ECF No. 1-2] consists of duplication of the Fourth Circuit's opinion, noted above. [See ECF No. 182 in Criminal Action No. 1:19-CR-41]. Plaintiff also summarizes alleged losses for "medical injuries and neglect, loss of consortium . . . emotional distress, humiliation, and shame for being unjustly convicted, [and] loss of revenue from business." [ECF No. 1-2, at 17].

Plaintiff does not offer much specificity of how the respective Defendants were involved in her underlying criminal matter, nor does she explain their relationship to one another. However, based on the reproduction of the Fourth Circuit's opinion in the Complaint, it appears that, on July 3, 2018, Officer Helms ("Helms"), in the course of his work with MCPD, initiated a stop of a vehicle in which Plaintiff was a passenger, resulting in the search and seizure at issue, and Plaintiff ultimately being indicted in the underlying criminal matter. Based on Defendants' memorandum in support of their motion to dismiss, the other Defendants also are, or were, officers affiliated with MCPD. [ECF No. 5, at 5]. More specifically, Defendant Powell is the chief of the department (although Defendants state he was not chief when Plaintiff was arrested and was not involved in that incident otherwise). [ECF No. 5, at 2]. However, the alleged role of Defendant Officer Bradford ("Bradford") is unclear from the Complaint or from briefing elsewhere provided herein. The specific acts or omissions of MCPD of which Plaintiff complains are not clear.

In the Complaint, Plaintiff provides certain periods of time in which it appears that she was incarcerated when the underlying criminal matter was being litigated. She assigns specific monetary amounts to those periods of time, which it seems are provided in support of her alleged

3

damages. [ECF No. 1-2, at 17-18]. The formulas and authorities for those monetary amounts is unclear. Plaintiff also claims monetary losses related to a "patent on candles," but offers little specificity in support. [ECF No. 1-2, at 18]. At bottom, Plaintiff appears to claim monetary losses of $301,7156.42.

## II. LEGAL ISSUES AND ANALYSIS

Despite Plaintiff's receipt [ECF No. 14] of the Roseboro Notice [ECF No. 9] regarding Defendants' motion to dismiss [ECF No. 4], Plaintiff has responded in writing as to only one issue raised in Defendants' motion to dismiss, that being the running of the statute of limitations. Where Plaintiff so responded to that issue, the undersigned addresses it here. Otherwise, the undersigned addresses Defendants' arguments without benefit of Plaintiff's argument, despite Plaintiff clearly having received notice of her right to respond to the motion to dismiss.[2]

### A. Legal Standards

Because Plaintiff is proceeding *pro se*, the Court must liberally construe the pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct *pro se* plaintiffs' legal arguments for them, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

To survive a motion to dismiss, the rules which govern civil actions require that Plaintiff here set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."

---

[2] To this latter point, while the undersigned largely recommends action in accord with Defendants' arguments, in the absence of argument provided by Plaintiff, the undersigned does not intend for the recommendations to have precedential value, should similarly-situated parties in other matters provide more information and argument on the issues.

4

Fed. R. Civ. P. 8(a)(2). Moreover, a complaint must set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under seminal civil procedure caselaw, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reliance on Twombly, the Supreme Court has emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Plaintiff's Claims Untimely Brought

Plaintiff's claims sound in 42 U.S.C. § 1983. Broadly speaking, § 1983 actions provide an avenue for litigants to bring civil claims against state and local government employees who allegedly perpetuated civil rights violations while acting "under color of state law." Defendants here argue, correctly, that Plaintiff untimely filed the Complaint such that it is barred by the statute of limitations applicable to claims under 42 U.S.C. § 1983. Plaintiff alleges wrongful acts (unlawful search and seizure) committed on July 3, 2018, yet she did not file the Complaint until February 7, 2023, after the two-year statute of limitations had run.

As for how the statute of limitations for § 1983 actions operates, 42 U.S.C. § 1983 does not itself specify a statute of limitations for claims brought pursuant to that law. Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 388 (4th Cir. 2014). Rather, such claims are governed by "the most analogous state-law cause of action," which is that for a personal injury claim. Id. Because the alleged acts occurred in West Virginia, the Court must look to West Virginia law. State law provides that "[e]very personal action for which no limitation is otherwise prescribed shall be brought . . . within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" W. Va. Code § 55-2-12(b) (emphasis added). A personal injury claim is such a claim for which no statute of limitations is specifically set forth

in West Virginia. Thus, it is governed by this "residual" statute of limitations – that is, the statute of limitations for causes of action for which no statute of limitations is otherwise specified.

Relatedly, the date of accrual of the cause of action appears to be the date of Plaintiff's encounter with Defendants here, when the search and seizure occurred. Although state law determines the applicable statute of limitations, federal law dictates the time of accrual for civil rights causes of action. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). "[T]he time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." Id. In the instant matter, Plaintiff straightforwardly alleges that the events giving rise to her claim occurred on July 3, 2018.

As to the date of accrual, Plaintiff filed the above-noted "Answer to Motion to File Out of Time Due to the Novel Coronavirus and Dismissal." [ECF No. 17]. The undersigned construes this as Plaintiff's response in opposition to Defendants' dismissal motion. Plaintiff makes two arguments: (1) that she filed the Complaint within two years of the Fourth Circuit's decision vacating her underlying criminal conviction and sentence, which was on November 29, 2022, and (2) the national emergency concerning the novel coronavirus (COVID-19), and the governmental declarations related to it, allow her to file out of time.

Plaintiff cites no authority for the proposition that accrual of the claim was when the Fourth Circuit issued its decision. In fact, relevant caselaw supports the conclusion that accrual was on the date of events of which Plaintiff complains, July 3, 2018. That is the date of the search and seizure with which Plaintiff takes issue. And the Fourth Circuit has plainly held that accrual of a § 1983 claim based on an allegedly improper search and seizure, is the date of the search and seizure. Smith v. Travelpiece, 31 F.4th 878, 887 (4th Cir. 2022). In fact, in Travelpiece, the Fourth

Circuit went on to reject that claimant's argument (much like that of Plaintiff's in the instant matter) that accrual began at a later date, when charges were dismissed. Id., at 888.

Plaintiff also incorrectly relies on COVID-19 protocols as an excuse for the delay in filing her Complaint. However, Plaintiff cites to what appears to be an excerpt of an order issued by the U.S. Supreme Court, specific to that court's operations in March of 2020. She does not explain how it bears on the delayed filing of her complaint in this District Court in the year 2023. [ECF No. 17, at 2]. Otherwise, Plaintiff cites no particular statutory authority, caselaw, local order or local rule of any court, or any other provision at law, that would allow such a delayed filing.

While the COVID-19 pandemic certainly created operational disruptions for this Court and other institutions, and while the CARES Act and other provisions were enacted in an effort to minimize such disruptions, there is no authority to suggest that COVID-19 disruptions and operations would render Plaintiff's Complaint timely filed here. In fact, as noted by co-Defendants herein, an Administrative Order of the West Virginia Supreme Court of Appeals, issued on May 6, 2020, aids in this question. [See ECF No. 7-1]. Plaintiff filed her Complaint in state court, so the state courts' Administrative Order is germane. That Administrative Order provided that, during the judicial emergency from March 23, 2020 to May 15, 2020, statutes of limitations which did not expire in that timeframe were not extended. (Statutes of limitations which did expire in that timeframe were extended to June 12, 2020). The applicable statute of limitations here did not expire in that timeframe, and so the applicable two-year statute of limitations in this matter was unaffected by that Administrative Order. Thus, Plaintiff's argument about the delay in filing the Complaint being permissible, is incorrect.

In sum, Plaintiff's claims here are governed by a two-year statute of limitations and she would have had to comply with the same by filing her Complaint within two years of the date of

7

events complained of, that being July 3, 2018. However, Plaintiff did not file the Complaint until February 7, 2023, well past the applicable two-year statute of limitations. Thus, the undersigned concludes that Plaintiff's claim is barred by the applicable two-year statute of limitations and that the Complaint should be dismissed for failure to state a claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Plaintiff Cannot Bring Claims Against MCPD Specifically

As to Defendant MCPD, it is not clear what complaint Plaintiff has with it, other than, perhaps, it is an entity with which the individually-named Defendants are or were affiliated, in some respect. In any case, as Defendants note, MCPD is an instrumentality or agency of the City of Morgantown, incapable of being sued as a standalone entity. Under West Virginia Code, municipalities such as Morgantown, West Virginia have plenary authority to establish their own police departments. More specifically, "[t]he police force or department in each municipality shall be subject to the authority, control and discipline of the administrative authority." W. Va. Code § 8-14-1.

As such, MCPD is not an entity which can be sued, given how it is established as an "arm" of the municipality. Defendants point to the West Virginia Governmental Tort Claims and Insurance Act, W. Va. Code § 29-12A-3(b), and its definitions of "municipality" and "political subdivision," to illustrate how such a municipal police department itself is not an entity capable of being sued. Indeed, it appears that Plaintiff has named a party-defendant in MCPD which cannot be sued in such a manner as Plaintiff attempts here. Polk v. Town of Sophia, No. 5:13-CV-14224, 2013 WL 6195727, at *4 (S.D.W. Va. Nov. 27, 2013). Accordingly, Plaintiff's inclusion of MCPD as a Defendant herein is improper, and MCPD should be dismissed from this action.

!

### D. Plaintiff Fails to State a Claim Against Defendants MCPD and Powell

As noted in the background summary above, the specific wrongs alleged to have been perpetrated by either Defendant herein are unclear. In fact, the Complaint is largely silent on what Defendants did or did not do with regard to Plaintiff's alleged losses. Certainly, Rule 8(a) of the Federal Rules of Civil Procedure does not generally require that claims be pled with great detail. Nonetheless, claims must be pled with sufficient detail that a defendant has fair notice of the basis of a plaintiff's claim. Twombly, 550 U.S. at 555. More specifically:

> It is established that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. We have recognized that facial plausibility is established once . . . the complaint's factual allegations produce an inference . . . strong enough to nudge the plaintiff's claims across the line from conceivable to plausible. In assessing the sufficiency of a complaint, we assume as true all its well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. Thus, to satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged.

Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017) (internal citations and quotations omitted). In the context of a claim under 42 U.S.C. § 1983, such as the one which Plaintiff attempts to bring here, a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. 676. In other words, the Complaint must contain enough factual allegations to be plausible enough for the Court to reasonably infer that each named Defendant bears liability.

While Rule 8(a) sets forth a rather permissive pleading standard, Plaintiff cannot lodge broad allegations and conclusions alone. Rather, Plaintiff must state which Defendant engaged in which specific act. However, Plaintiff has not done so. There are no allegations whatsoever in the Complaint about Defendant Powell. Thus, he should be dismissed from this action on that basis.

Finally, a strained, generous reading of the Complaint may reveal that Plaintiff instead is attempting to impute liability to MCPD and Powell because of the actions of co-Defendants Helms and Bradford. Even so, such an argument fails. Again, as Iqbal instructs, "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Accordingly, if Plaintiff is pursuing relief on such a theory, the Complaint fails and should be dismissed.

### E. Plaintiff Fails to State a Claim for Improper Detention/Prosecution

Again, reading Plaintiff's Complaint liberally, it may be that she attempts to state a claim sounding in improper detention or improper prosecution. However, as Defendants correctly argue, the Complaint fails in this regard. Plaintiff has not shown how *any* Defendant tread on her constitutional rights after the time of the search and seizure. As the Fourth Circuit has instructed:

> [C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation. Accordingly, subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure. . . Such intervening acts of other participants in the criminal justice system insulate a police officer from liability.

Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citations and quotations omitted).

While Chalmers sets forth some exceptions to this principle, the undersigned does not parse through them here, given the paucity of Plaintiff's arguments in this regard. Without more specificity in the Complaint, a reviewer cannot explore the tendrils of all possible argument and doctrine on which Plaintiff may purport to rely. Suffice it to say that Plaintiff has made no allegation about Defendants acting improperly after the search and seizure of which she complains.

As such, Plaintiff makes no colorable claim for improper detention or improper prosecution. Thus, to the extent which the Complaint may be read to lodge such a claim, it should be dismissed.

### III. RECOMMENDATION AND CONCLUSION

Accordingly, for the reasons herein stated, the undersigned **RECOMMENDS** that Defendants' motion to dismiss [ECF No. 4] be **GRANTED** and Plaintiff's Complaint [ECF No. 1-2] be **DISMISSED WITHOUT PREJUDICE as to Defendants MCPD and Powell**.

Any party may within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the presiding United States District Judge.

**Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.** 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to all parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

It is so **RECOMMENDED AND ORDERED.**

Respectfully submitted June 6, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE